# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| KATHERINE M. RUDD, individually, and as | ) | |
| Co-Trustee of the J.W. Goodwin and Virginia M. | ) | |
| Goodwin Grandchildren's Trust, and as | ) | |
| Co-Trustee of the Joy Goodwin Adams | ) | |
| Irrevocable Trust dated July 19, 1989, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:13-cv-02016-JEO |
| | ) | |
| BRANCH BANKING & TRUST COMPANY, | ) | |
| Co-Trustee of the Joy Goodwin Adams | ) | |
| Irrevocable Trust dated January 2, 1987 and the | ) | |
| Joy Goodwin Adams Irrevocable Trust | ) | |
| dated July 19, 1989, | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOY G. ADAMS, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

In this action, Plaintiffs Katherine M. Rudd ("Kate") and Tiffany Rudd

Atkinson ("Tiffany") (collectively "Plaintiffs"), bring claims under Alabama state

law for breach of fiduciary duty based upon allegations of malfeasance in the

administration of family trusts and related business organizations.  (*See* Doc.[1] 1-1 at 5-31 ("Complaint" or "Compl."); Doc. 31, Amended Complaint ("Amended Complaint" or "Amd. Compl.")).  The cause comes to be heard on a motion filed by previously-dismissed defendant Wells Fargo Bank, N.A. ("Wells Fargo") seeking $83,484.50 in attorney's fees and $455.77 in expenses from out of the *res* of certain trusts that the parties and the court have referred to as the "Marital Trust" and the "Shares Trusts," "to the extent those trusts might be determined to still exist and/or to have any traceable assets."  (Doc. 91).  Plaintiffs opposes the motion (Doc. 94), and Wells Fargo has filed a reply in support.  (Doc. 95).  Upon consideration, the court[2] will grant Wells Fargo's fee application in total.

## I.     BACKGROUND

Plaintiffs originally filed this action on September 27, 2013, in the Circuit Court of Jefferson County, Alabama (the "state court") against two defendants, Branch Banking and Trust Company ("BB&T") and Wells Fargo.  Broadly stated, Plaintiffs alleged those defendants and their respective, predecessor-in-interest

---

[1]References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as designated on the docket sheet.  Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF system, which may not correspond to pagination on the original "hard copy" presented for filing.

[2]The parties have consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 20).

2

financial institutions had engaged in wrongdoing while serving as co-trustees of certain trusts created by Plaintiffs' grandparents. The parties and the court have referred to the trusts involved in this action by the shorthand designations the "Share I Trust," the "Share II Trust" (collectively the "Shares Trusts"), the "1989 Trust," the "Marital Trust," and the "Grandchildren's Trust." Plaintiffs asserted that BB&T and Wells Fargo as co-trustees, and another company appointed in some instances to serve in their stead as a trust "custodian," Arlington Trust Company ("Arlington"), enabled Plaintiffs' mother, Joy G. Adams ("Joy"), the life beneficiary and the then-"other" co-trustee of the relevant trusts, to obtain distributions and trust property in contravention of the governing trust instruments. Plaintiffs charged that in so doing BB&T and Wells Fargo breached obligations as a co-trustee to protect the interests of remainder beneficiaries, which Plaintiffs alleged to include themselves individually or certain of the other family trusts of which Plaintiffs claimed to be trustees, beneficiaries, or both. Plaintiffs further contended that Joy, BB&T, Wells Fargo, and Arlington kept Plaintiffs in the dark about their interests in the respective trusts by failing to send them notices and disclosures about the existence and operation of the trusts.

BB&T and Wells Fargo removed the action to this court based on diversity jurisdiction. (Doc. 1). Some of Plaintiffs' claims against BB&T remain pending

3

but are not material to the instant motion. As to Wells Fargo, following removal, it filed an alternative motion for a dismissal or a stay, arguing that Plaintiffs had entered into a forum-selection agreement by which they had stipulated to litigate their claims against Wells Fargo within the confines of another, related civil action that Plaintiffs had previously filed in the state court against Wells Fargo and others. (Doc. 9). The court granted Wells Fargo's motion to dismiss, concluding that Plaintiffs were bound by the forum-selection agreement providing that they would bring their claims against Wells Fargo, if it all, in a related proceeding then pending in the Circuit Court of Jefferson County, Alabama, Birmingham Division, before the Hon. Judge Robert S. Vance, Jr., case number CV-2012-900915.00 (hereinafter the "State-Court Action"). (Doc. 27 at 21-29). Accordingly, the court dismissed those claims without prejudice to Plaintiff's right to re-file them in the State-Court Action. Plaintiffs subsequently took the opportunity to do so. Wells Fargo then moved this court to certify as final, pursuant to Fed. R. Civ. P. 54(b), that portion of its Memorandum Opinion and Order that dismissed Plaintiffs' claims against Wells Fargo without prejudice. (Doc. 32). Plaintiffs later joined in that motion (Doc. 42), which the court granted. (Doc. 44). No appeal followed, however.

Wells Fargo moved, pursuant to Ala. Code § 19-3B-709, to be reimbursed

4

from out of the property held by the Shares Trusts, the Marital Trust, or both, in the amount of $39,331 for attorney's fees and expenses incurred in this court. (Doc. 29). The court initially denied that motion. (Doc. 45). In so doing, the court determined that it could not order payment of fees from out of the res of either trust because it did not appear from the record that the court possessed jurisdiction over the current co-trustees of either the Shares Trusts or the Marital Trust, who would, the court concluded, be necessary parties to any such adjudication. Wells Fargo moved for reconsideration of that denial. (Doc. 48). The court agreed to do so and ultimately held that Wells Fargo could recover fees and expenses from the trust property under § 19-3B-709. (Doc. 90 at 56-85). As such, the court ordered Wells Fargo to file an application and evidence itemizing, documenting, or otherwise supporting the specific amount of fees and expenses claimed and the reasonableness thereof. (*Id.* at 84).

Wells Fargo has now filed such materials. (Doc. 91). Specifically, Wells Fargo claims entitlement to $83,484.50 in attorneys' fees and $455.77 in expenses, "to be paid out of the estates of the Shares Trusts and/or the Marital Trust to the extent those trusts might be determined to still exist and/or to have any traceable assets." (*Id.* at 1). Wells Fargo also claims that it will be entitled to recover additional fees incurred in litigating its fee motion. (*Id.*, ¶¶ 2, 11). Wells Fargo

contends that its fees and expenses have been "properly incurred" for purposes of Ala. Code § 19-3B-709(a)(1), and are reasonable. In support of its fee application, Wells Fargo has declarations from two of its attorneys of record in the case (Docs. 91-1, 91-3) and itemized billing records (Doc. 91-2).

Plaintiffs oppose the motion. (Doc. 94). They first argue that Wells Fargo is judicially estopped from seeking fees and expenses from out of the *res* of the Shares Trusts or the Marital Trust. (*Id.* ¶¶ (I)(4) -(8)). Specifically, Plaintiffs point to summary judgments Judge Vance entered in the State-Court Action on March 7, 2017, in which he accepted contentions that Plaintiffs cannot prevail on claims involving administration of the Shares Trusts or the Marital Trust because those trusts no longer exist. (*Id.* ¶ (I)(5)). Plaintiffs note that they filed a motion to alter, amend, or vacate Judge Vance's summary judgment order in favor of Wells Fargo. (*Id.* at p. 4 n. 2). A review of documents in the state-court case file available on www.Alacourt.com indicate, however, that Judge Vance summarily denied that motion on December 18, 2018 (Doc. 1205 in the State-Court Action). Those documents also indicate that Plaintiffs filed a notice of appeal on February 8, 2019, with Wells Fargo cross-appealing from an order by Judge Vance denying its request for attorneys' fees in the State-Court Action. As far as this court can tell, that appeal remains pending in the Alabama Supreme Court. In addition to its

6

judicial-estoppel claim, Plaintiffs press a host of arguments urging that the amount of fees that Wells Fargo seeks is excessive and unreasonable. (Doc. 94 at pp. 5-13). In a related vein, Plaintiffs also contend that Wells Fargo's "limited success" in this court "warrants a low or no fee award." (*Id.* at p. 13).

## II. DISCUSSION

### A. Judicial Estoppel

The court first considers Plaintiffs' argument that Wells Fargo is judicially estopped from seeking attorneys' fees and expenses. Generally speaking, under the doctrine of judicial estoppel, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (*quoting Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). Because this is a diversity case, the court is bound to apply judicial estoppel as interpreted under Alabama state law. *See Original Appalachian Artworks, Inc. v. S. Diamond Assocs., Inc.*, 44 F.3d 925, 930 (11th Cir. 1995); *Nationwide Prop. & Cas. Co. v. Phillip Hunt & Cmty., & S. Bank, Inc.*, 2014 WL 2698637, at *2 (N.D. Ala. June 13, 2014) (Ott, M.J.). For determining the applicability of judicial estoppel, the Alabama Supreme Court has

embraced the factors set forth in the United States Supreme Court's decision in *New Hampshire v. Maine*, 532 U.S. 742 (2001). *See Ex parte Jackson Hosp. & Clinic, Inc.*, 167 So. 3d 324, 332 (Ala. 2014); *Ex parte First Ala. Bank*, 883 So. 2d 1236, 1246 (Ala. 2003). Under that formulation, a court generally looks for the following elements:

> (1) a party's later position must be clearly inconsistent with its earlier position; (2) the party must have been successful in the prior proceeding so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and (3) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Hamm v. Norfolk So. Ry. Co.*, 52 So. 3d 484, 494 (Ala. 2010) (internal quotation marks and citations omitted).

In support of their claim that these requirements are met, Plaintiffs highlight that Wells Fargo maintained throughout the course of the State-Court action that both the Shares Trusts and the Marital Trusts had already terminated even prior to the commencement of that litigation. Plaintiffs further emphasize that, on March 7, 2017, Judge Vance granted summary judgment in favor of Wells Fargo, holding that the Marital Trust had terminated and "ended for all purposes" in August 2013, thereby precluding Plaintiffs from having standing to pursue claims as its trustees. (*See* Doc. 65-1 at 4-5, Doc. 981 in the State-Court Action). And "on the same

8

date," Plaintiffs say, "Judge Vance [likewise] concluded that the Shares Trust[s] had terminated in April 2011 and that Plaintiffs lacked standing to bring claims with respect to the Shares Trust[s]." (Doc. 94 ¶ 5, citing Doc. 983 in the State-Court Action, Doc. 66-1 in this action). As such, Plaintiffs contend that, by seeking to recover fees from out of these trusts that Judge Vance has held no longer exist, Wells Fargo is trying "to have its cake and eat it too." (Doc. 94 ¶ 7). As further explained below, however, the court declines Plaintiffs' invitation to apply judicial estoppel against Wells Fargo's claim for fees and expenses.

For starters, Plaintiffs notably fail to cite any caselaw in support of their judicial estoppel argument. But more substantively, the court recognizes that Judge Vance's order in the State-Court Action holding that the Shares Trusts no longer exist was in response to a dispositive motion filed not by Wells Fargo but instead by its co-defendant, Arlington. (Doc. 66-1, State-Court Action Doc. 983). Plaintiffs therefore have not shown that *Wells Fargo* successfully pursued an inconsistent argument in the State-Court Action as it relates to the existence *vel non* of the Shares Trusts.

On the other hand, Wells Fargo did prevail at summary judgment on Plaintiffs' claims related to the Marital Trust based Judge Vance's conclusion that such trust had ceased to exist for all purposes as of August 30, 2013. (Doc. 65-1

at 4-5).  Wells Fargo does not seriously debate that it is inconsistent for it to argue

that Plaintiffs' can have no recovery on behalf of the Marital Trust because it does

not exist and simultaneously claim that they themselves might be awarded

property from out of that same trust.  However, according to the alacourt.com

documents, Plaintiffs have appealed Judge Vance's ruling that those trusts are

wholly defunct.  The parties have not cited, and the court's own research has not

disclosed, a controlling case as to whether or how the pendency of an appeal bears

on the applicability of judicial estoppel in this instance.  Nevertheless, the authors

of Wright and Miller submit that, while "there is a division of authority, the better

view is that judicial estoppel may be denied if a position accepted by a trial

tribunal is subject to a pending appeal.  Reversal would remove the risk of

inconsistent outcomes."  18B C. Wright, A. Miller, et al., Fed. Prac. & Proc. §

4777 n. 101.50 (2d ed.), citing *Trustees in Bankr. of N. Am. Rubber Thread Co.,

Inc. v. United States*, 593 F.3d 1346, 1357-1361 (Fed. Cir. 2010) (Gajarsa, J.,

dissenting).  The court agrees that such is the better view given modern practice

that generally allows litigants liberally to pursue alternative, inconsistent positions

at once.  *See generally* Fed. R. Civ. P. 8(d)(2) (allowing the pleading of claims and

defenses "alternatively or hypothetically"); Ala. R. Civ. P. 8(e)(2) (same); *Ex parte

King*, 591 So. 2d 464, 467 (Ala. 1991) (holding that a "trial court abused its

discretion in ordering [a plaintiff] to make an election between two alternative, inconsistent, and mutually exclusive claims"); *In re Hosp. Ventures/Lavista*, 2007 WL 7141796, at *7 (Bankr. N.D. Ga. Jan. 4, 2007) ("Parties are entitled to plead alternatively, and the doctrine of judicial estoppel applies only if the party to be estopped succeeded in asserting a prior inconsistent position." (citation omitted)). Thus, in the absence of contrary authority, the court is inclined to make an "*Erie* guess," *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Allen v. A. G. Edwards & Sons, Inc.*, 606 F.2d 84, 86 (5th Cir. 1979), that the Alabama Supreme Court would abide by this narrower view holding that judicial estoppel does not apply to issues raised in a pending appeal.

But even were it otherwise, the court finds that Plaintiffs also have not shown that they would suffer an unfair detriment or that Wells Fargo would gain an unfair advantage absent an application of judicial estoppel. Again, this is not a fee-shifting situation, and the court is not proposing to tax attorneys' fees or expenses against Plaintiffs individually. Rather, Wells Fargo might only recover such fees and expenses from out of the estate of the Shares Trusts and/or the Marital Trusts pursuant to Ala. Code § 19-3B-709. But so far as the court can tell, there are no assets actually held by those trusts at this time, and there may be none unless and until Plaintiffs might prevail on one or more of their claims related to

those trusts, either in this court or in the Alabama state courts. Indeed, "Wells [Fargo] fully acknowledges that, if Judge Vance's rulings are final, then neither the Marital Trust nor the Shares Trusts, as non-existent trusts, will be able to reimburse Wells Fargo's fees." (Doc. 95 at 6). In other words, it is only to the extent that one or more those trusts might be determined to still exist or have any traceable assets, consistent with Plaintiffs' own claims and arguments and contrary to Judge Vance's holdings, that Wells Fargo might get anything. In short, the court agrees with Wells Fargo that "if Judge Vance's ruling is the final word, then Wells Fargo would be stuck trying to recover fees from non-existent trusts, but no court would have been 'misled.'" (Doc. 95 at 7). Thus, the court will not apply judicial estoppel to bar Wells Fargo's claims for attorneys' fees and expenses.

## B.  Arguments Regarding the Amount of Attorneys' Fees[3]

Plaintiffs also argue that the amount Wells Fargo has claimed for attorneys' fees, $83,484.50, is "grossly excessive and unreasonable." (Doc. 94 at 5, ¶ 1). As this is a diversity case and Wells Fargo relies on a state statute authorizing fees, Alabama law controls the inquiry. *See Trans Coastal Roofing Co. v. David Boland, Inc.*, 309 F.3d 758, 760 (11th Cir. 2002). Under that law, Wells Fargo is

---

[3]Plaintiffs do not challenge the amount of the expenses that Wells Fargo claims are also subject to reimbursement under § 19-3B-709. Those total $455.77 and represent this court's $400 filing fee upon removal plus certain associated items. (*See* Doc. 91-1 at 3-4, ¶ 9).

entitled to reimbursement from out of trust property for its attorneys' fees here to the extent they were "properly incurred," Ala. Code § 19-3B-709(a)(1), and are "reasonable." *See Ladd v. Stockham*, 209 So. 3d 457, 470 (Ala. 2016); *Regions Bank v. Lowrey*, 101 So. 3d 210, 220 (Ala. 2012) ("*Lowrey I* "); *Regions Bank v. Lowrey*, 154 So. 3d 101, 108 (Ala. 2014) ("*Lowrey II*").

The Alabama Supreme Court has identified 12, non-exhaustive criteria for courts to consider in assessing the reasonableness of an attorneys' fee award:

> [(1)] [T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

*Lowrey II*, 154 So. 3d at 108 (quoting *Kiker v. Probate Court of Mobile Cnty.*, 67 So. 3d 865, 867 68 (Ala. 2010), quoting, in turn, *Van Schaack v. AmSouth Bank, NA*, 530 So. 2d 740, 749 (Ala. 1988) (internal quotation marks omitted)). The parties agree that the court may properly consider these criteria (Doc. 91 at 3, ¶ 5; Doc. 94 at 8-9, ¶ 9(c)), although not all of them will necessarily be applicable under the particular circumstances of this case. *See Van Schaack*, 530 So. 2d at

749.

### 1.    Measure of Success

The main thrust of Plaintiffs' challenge to Wells Fargo's fee petition goes to the amount of work performed and the total billed, which Plaintiffs say calls for Wells Fargo's attorneys' fee application "to be denied, or drastically reduced." (Doc. 94 at 5, ¶ 1; *see also id.* at 14 ("Wells Fargo's fee request ... is based on over-lawyering and over-billing.")).  In particular, Plaintiffs maintain that Wells Fargo's claimed fee amount is excessive and unreasonable in light of what Plaintiffs characterize as Wells Fargo's "limited success" in this forum.  (*Id.* at 13).  The "measure of success achieved" by a party is the sixth criterion listed in *Kiker*, and the court will address this aspect of Plaintiffs' argument first, for they rely upon it heavily in claiming that Wells Fargo should receive "no fee" at all, or at least only "a low" one.  (*See id.* at 13-17).  Specifically, Plaintiffs say that "Wells Fargo's success in the litigation was limited to a dismissal without prejudice based on the Court's enforcement of a forum selection clause," emphasizing that Wells Fargo did not obtain an adjudication on the merits absolving it of wrongdoing or liability with respect to its fiduciary obligations as a trustee.  (*Id.* at 14).  In support, Plaintiffs cite several federal appellate cases interpreting 42 U.S.C. § 1988, a fee-shifting statute applicable in civil rights

actions, recognizing that the degree to which a plaintiff has succeeded is a crucial factor in determining the amount of an attorneys' fee award and that such an award may be withheld from a plaintiff who prevailed only in a technical sense. (Doc. 94 at 13-17 (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983); *Farrar v. Hobby*, 506 U.S. 103 (1992); *Riverside v. Rivera*, 477 U.S. 561 (1986); *Texas State Teachers' Ass'n v. Garland*, 489 U.S. 782 (1989); *Gray v. Bostic*, 720 F.3d 887 (11th Cir. 2013)).

Plaintiffs' reliance on those federal decisions, however, is largely misplaced. Because this is a diversity case, Alabama state law, not federal law, controls the fee inquiry. But more to the point, as the court explained in a prior order, Ala. Code § 19-3B-709 "is not a typical fee-shifting statute, by which one party in litigation may be ordered by the court to pay the attorney's fees of his adversary." (Doc. 45 at 6; *Rudd v. Branch Banking & Tr. Co.*, 2016 WL 7209727, at *3 (N.D. Ala. Aug. 8, 2016). That makes it unlike 42 U.S.C. § 1988, a statute authorizing the court to order the losing party to pay the attorneys' fees of the prevailing one.[4] Instead, § 19-3B-709 "addresses the right of a *trustee* to be

---

[4]Section 1988 provides in relevant part: "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, the Religious Freedom Restoration Act of 1993, the Religious Land Use and Institutionalized Persons Act of 2000, title VI of the Civil Rights Act of 1964, or section 12361 of Title 34, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs ...." 42 U.S.C.A. § 1988(b).

"*reimbursed out of the trust property* ... for ... expenses ... properly incurred in the administration of the trust."  (Doc. 45 at 6 (quoting Ala. Code § 19-3B-709(a)); *Rudd v. Branch Banking & Tr. Co.*, 2016 WL 7209727, at *3 (N.D. Ala. Aug. 8, 2016) (emphasis in prior order)).  And as the court has also emphasized before, "§ 19-3B-709 liberally favors reimbursement to a trustee for prosecuting and defending lawsuits; by the statute's terms, it does not require the trustee to prevail on the merits."  (*Id.*)  Indeed, it does not even require the trustee to be "successful" at all.  To the contrary, it expressly provides that a trustee is entitled to reimbursement for fees and costs in "the defense ... of any action, *whether successful or not*, unless the trustee is *determined* to have *willfully or wantonly* committed a *material* breach of trust."  Ala. Code § 19-3B-709(a)(1) (emphasis added).  While a party's degree of success is, generally speaking, an important factor to consider in assessing the reasonableness of an attorneys' fee, it is the terms of the applicable fee statute that ultimately govern.  And under the statutory language, the trustee's right to reimbursement is not strictly tied to his level of "success" in the litigation.

While this court granted Wells Fargo only a dismissal without prejudice based on the forum-selection agreement, no determination was made that Wells Fargo committed a material breach of trust, whether willfully, wantonly, or

otherwise, that would disentitle Wells Fargo to reimbursement under § 19-3B-709.

Further, since this court last discussed the fee issue, Judge Vance has entered a

final order dismissing Plaintiffs' claims against Wells Fargo in the State-Court

Action with prejudice, albeit subject to a pending appeal.  But even if those claims

still have some potential viability in the Alabama state-court system, that does not

alter the fact that this court has entered orders finally concluding the litigation in

this federal forum as to Wells Fargo.  Courts have recognized that a trustee may

have a right to reimbursement based on a no-merits dismissal.  *See Saulsbury v.*

*Denton Nat'l Bank*, 335 A.2d 199, 203-04 (Md. Ct. App. 1975) (affirming fees

awarded to defendant trustee where plaintiff beneficiaries seeking defendant's

removal were granted a voluntary dismissal without prejudice;  "[U]nless there has

been a final determination as to the alleged misconduct of the [trustee], such

alleged misconduct cannot be interposed as a defense to a petition for attorney fees

for the services rendered in defending the trustee."); *Matter of Estate of Iskyan*,

641 N.Y.S.2d 785, 787 (N.Y. Surrog. Ct. 1996) (awarding attorney's fees to

trustee where parties reached settlement in which trustee agreed to resign with no

admission of wrongdoing); *First Nat. Bank of Mishawaka v. Kamm*, 283 N.E.2d

563 (Ind. 1972) (affirming fee award to trustee where no trial was had upon the

merits because of a successful plea in abatement); *see also Russell v. State*, 51 So.

3d 1026 (Ala. 2010) (awarding attorney's fees to landowner under Ala. Code § 18-1A-232 in eminent-domain proceeding following dismissal for lack of jurisdiction, despite that the State had re-filed claims in new action); *Prime Ins. Syndacate, Inc. v. Soil Tech Distrib., Inc.*, 270 F. App'x 962, 965 (11th Cir. 2008) (upholding attorney fee for defendant under Florida statute that did not require party to prevail on the merits, based on dismissal of plaintiff's claim for lack of jurisdiction).

Moreover, the court agrees with Wells Fargo that its success in this court was not merely nominal, *de minimis*, or technical. Wells Fargo admittedly did not obtain a favorable judgment on the merits in this court. But Wells Fargo was not asking for one. Rather, Wells Fargo clearly obtained what it was seeking from this court: a ruling that would required Plaintiffs to litigate their claims against Wells Fargo, if at all, within the confines of the State-Court Action in front of Judge Vance, as well as a certification of that ruling as final under Rule 54(b). As such, the "measure of success achieved" by Wells Fargo generally supports its claimed fee award rather than undercuts it.

### 2. Nature and Complexity of the Work

Plaintiffs next line of attack on the claimed attorneys' fee amount focuses on the nature and alleged lack of complexity of the legal work performed by Wells Fargo's attorneys. To wit, Plaintiffs insist that such was "routine and did not

require any special skill or legal analysis." (Doc. 94 at 8, ¶ 9(b). Rather, Plaintiffs say, counsel's having removed the action and obtaining a forum-non-conveniens dismissal based on the forum-selection agreement "was neither novel, complicated nor time-consuming to litigate." (*Id.*; *see also id.* ¶ 9(c)).

Plaintiffs, however, state such arguments in little more than bare, conclusory terms, and they have neither offered any evidence in opposition or any alternative methodology for assessing the reasonableness of the fee. The court notes that, according to the attorney declarations attached to Wells Fargo fee application, the amount of the attorneys' fees claimed, $83,484.50, is based on 304.4 hours billed to and paid by Wells Fargo to its counsel's firm, Burr & Forman LLP. That work was performed by three partners, at rates between $255 and $400 per hour (Doc. 91-1 at 6, ¶ 14(a) - (c); four associates, at between $180 and $220 per hour (*id.* ¶ 14(d) - (g); and three paralegals, at between $100 and 165 per hour (*id.* ¶ 14(h) - (j)). Plaintiffs have not specifically disputed any of those hourly rates of pay, and the court finds them to be reasonable under the circumstances.

Plaintiffs rather blithely posit that Wells Fargo's removal and its formulation of arguments for a dismissal or a stay amounted to little more than child's play. Plaintiff have, however, glossed over a number of complicated issues

presented by both. First, determining that diversity jurisdiction existed to allow removal was not a simple matter. As the court itself stated, "given the nature of Plaintiffs' claims, the multiple capacities in which they purport to bring them, and the nature of the defendants, ascertaining the citizenship of the parties and whether there is complete diversity between all plaintiffs and all defendants is not a routine exercise." (Doc. 27 at 13; *see also id.* at 13-18). The court also agrees with Wells Fargo that making the arguments in support of the enforcement of the forum-selection agreement was not routine, either. Indeed, Plaintiffs devoted 25 pages of their briefing to oppose them. (*See* Doc. 13 at 5-13; Doc. 17 at 1-16). Such included substantial briefing raising arguments establishing that the parties' written agreement was effectively a forum-selection agreement, that Wells Fargo had not waived its right to seek enforcement by removing the action, that the agreement remained valid despite the state court's formal elimination of its "Commercial Litigation Docket" referenced in the agreement, that the agreement was binding on Plaintiffs insofar as they brought claims in a host of different capacities, and that the agreement otherwise actually covered their particular claims. (*See* Doc. 27 at 21-29; *see also* Docs. 9, 10, 11, 16, 18, 22).

In a related vein, Plaintiffs lament that Wells Fargo is seeking fees for raising certain arguments that ultimately were rejected by the court. Among these

20

were assertions that Plaintiffs' claims were subject to abatement under Ala. Code § 6-5-440 and were subject dismissal for improper venue under Fed. R. Civ. P. 12(b)(3).  Plaintiffs contend that these arguments, and the fees incurred making them, were "redundant or otherwise unnecessary."  (Doc. 94 at 6, ¶ 4).  The court disagrees.

While the court rejected Wells Fargo's arguments based on § 6-5-440 and Rule 12(b)(3), the court finds that the fees incurred in advancing them were properly incurred and reasonable.  As to § 6-5-440, there still is no Eleventh Circuit case confronting whether the statute can abate an action in federal court filed after a related action pending in state court.  Indeed, although the undersigned did not find it persuasive, there was some district court authority supporting Wells Fargo's position.  (*See* Doc. 27 at 18-19 (citing *Central Reserve Life Ins. Co. v. Kiefer*, 211 F.R.D. 445, 448 (S.D. Ala. 2002); *Simmons v. Pulmosan Safety Equip. Corp.*, 471 F. Supp. 999, 1001 (S.D. Ala. 1979)).  Likewise, it was not until shortly after Wells Fargo filed its motion to dismiss based on venue that the Supreme Court issued its decision in *Atlantic Marine Constr. Co. v. United States Dist. Ct. for the Western Dist. of Tex.*, 571 U.S. 49 (2013), that clarified that forum-selection agreements are enforceable under the traditional doctrine of *forum non-conveniens* rather than under Rule 12(b)(3) for

lack of venue.

Plaintiffs also argue that "an undue amount of attorney hours (totaling $5183)" were devoted to making this court's *forum non conveniens* dismissal of Wells Fargo a final, appealable judgment under Rule 54(b) and that, therefore, "[a]n excessive number of hours were spent analyzing and reviewing the effect of the Court's Order of dismissal on *forum non conveniens* grounds when dismissal of all pending claims against Wells Fargo dictated that no further analysis was needed." (*See* Doc. 94 at 10, ¶¶ 9(e) & (g)). Plaintiffs fail to acknowledge, however, that they initially told Wells Fargo that they would oppose any Rule 54(b) certification. (*See* Doc. 32 at 1 n. 1). Such opposition could have interfered with the parties' forum-selection agreement, because, absent a certification, "Plaintiffs could attempt to re-litigate the forum-selection issues before this court or during an appeal following a final judgment on Plaintiffs' remaining claims against BB&T." (*See id.* at 3, ¶ 4). Complicating matters further, while Plaintiffs had informally indicated their opposition to Rule 54(b) certification, they never filed any briefing. This required Wells Fargo, months later, to ask for a formal briefing schedule or status conference on the issue. (*See* Doc. 41). It was only after the court's briefing deadline passed that Plaintiffs changed tack and joined a Motion for Entry of Judgment under Rule 54(b). (Doc. 43).

Finally, Plaintiffs also complain that, after obtaining its *forum-non-conveniens* dismissal in November 2014, Wells Fargo's initial application for attorneys' fees filed weeks later sought $39,331.00 in attorneys' fees, whereas its instant fee petition seeks more than double that amount, $83,484.50. Plaintiffs highlight that since the aforementioned dismissal, no claims for relief have been pending against Wells Fargo "to warrant the performance of any substantive legal work." (Doc. 94 at 7, ¶ 8). Some of the additional claimed fees were incurred in connection with seeking the Rule 54(b) certification, discussed above. But the bulk of the difference comes from Wells Fargo's attempts to establish its entitlement to recover attorneys' fees and expenses. That has included an initial fee petition briefing (Docs. 29, 37) and substantial briefing in support of a successful motion by which Wells Fargo convinced the court to reconsider its denial of fees. (Docs. 48, 54, 56, 65, 76, 84). There is no question that, under § 19-3B-709, a trustee's right to reimbursement for litigation expenses may generally include attorneys' fees spent litigating a claim for attorneys' fees. *See Lowrey II*, 154 So. 3d at 112. And the fact is that Plaintiffs have fought hard against Wells Fargo's attempts to recover attorneys' fees from any source, filing, to this point, six briefs in opposition. (Docs. 33, 53, 64, 81, 85, 94). The court agrees with Wells Fargo that "Plaintiffs can hardly complain that Wells Fargo has

devoted time to briefing the same issues that Plaintiffs themselves have briefed."
(Doc. 95 at 16).

## III.  CONCLUSION

Based on the foregoing, the court hereby **GRANTS** Wells Fargo's application (Doc. 91) for an award of attorneys' fees, in the amount of $83,484.50, and for expenses, in the amount of $455.77, to be taxed against the Shares Trusts and the Marital Trust to the extent that those trusts might be determined to still exist or have any traceable assets.  Wells Fargo is also granted leave to supplement this award with fees incurred in briefing this present application and to add any interest calculations based on the date of the court's award.

**DONE**, this 15th day of July, 2019.

_John E. Ott_
_____
**JOHN E. OTT**
Chief United States Magistrate Judge