# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| KATHERINE M. RUDD, *et al*., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| BRANCH BANKING & TRUST | ) |
| COMPANY, | ) |
| | )   Case No. 2:13-cv-02016-SGC |
| Defendant/Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JOY G. ADAMS, | ) |
| | ) |
| Third-Party Defendant. | ) |

## MEMORANDUM OPINION & ORDER

Pending before the court is a motion filed by Branch Banking & Trust Company ("BB&T"), seeking to recover from the "1989 Trust," under Ala. Code § 19-3B-709(a)(1), attorneys' fees and expenses incurred in defending claims related to the administration of that trust. (Doc. 207). More specifically, BB&T seeks attorneys' fees and expenses totaling $614,791.62. (Doc. 207). For the reasons stated below, the court will grant the motion and award BB&T the full amount of the attorneys' fees and expenses it seeks.

## I. Background

BB&T is a former trustee of the 1989 Trust. (*See* Docs. 204, 222). Katherine M. Rudd ("Kate") and Tiffany Rudd Atkinson ("Tiffany") (collectively, "the sisters") are the current trustees of the trust. (*See* Doc. 222). The court entered a memorandum opinion and order on March 22, 2023, granting summary judgment in favor of BB&T on the breach of fiduciary duty claim asserted against it by the sisters. (Doc. 204).[1] That claim alleged wrongdoing in relation to the 1989 Trust and the "Shares Trust." In relation to the 1989 Trust, the question was whether BB&T committed a breach of fiduciary duty by failing to audit the trust annually and provide Kate and Tiffany, as beneficiaries of the trust, with annual accounting reports. (*See* Doc. 205 at 45-46, 45 n.43). Kate and Tiffany asserted BB&T owed them auditing and accounting obligations under the instrument governing the 1989 Trust and the Alabama Uniform Trust Code (the "AUTC"). The court concluded

---

[1] In the same memorandum opinion and order, the court denied summary judgment in favor of Joy G. Adams ("Joy") on the claims asserted against her by BB&T but dismissed some of BB&T's claims against Joy as moot. (Doc. 204). Following entry of the memorandum opinion and order, the sole remaining claim against Joy (and in the action as a whole) was BB&T's contractual claim for indemnification, seeking attorneys' fees and expenses incurred in defending claims related to the administration and termination of the Shares Trust. (Doc. 204). BB&T and Joy subsequently filed a joint stipulation for entry of judgment on the claim in favor of BB&T and against Joy in the amount of $614,791.62. (Doc. 217). The court entered judgment in favor of BB&T and against Joy consistent with those parties' stipulation and then entered a final judgment closing the case. (Doc. 219, 220). Kate and Tiffany filed a notice of appeal (Doc. 226), and the appeal remains pending before the United States Court of Appeals for the Eleventh Circuit, *see Katherine Rudd, et al. v. Branch Banking & Trust Company*, Appeal No. 23-12708 (11th Cir. appeal docketed Aug. 21, 2023). A district court retains jurisdiction to address a fee motion, notwithstanding the pendency of an appeal from a final judgment. *Rothenberg v. Sec. Mgmt. Co., Inc.*, 677 F.2d 64, 65 (11th Cir. 1982).

the breach of fiduciary duty claim failed on the merits insofar as it relied on the instrument governing the 1989 Trust because a determination made by Judge Robert S. Vance in a related state case that no reporting obligation was owed Kate or Tiffany individually under the instrument now was entitled to preclusive effect in this proceeding.  (Doc. 204 at 46-47).  The court concluded the claim failed on the merits insofar is it relied on the AUTC because there was no evidence Kate or Tiffany suffered damage because BB&T shirked its alleged auditing and reporting obligations.  (Doc. 204 at 47-52).

BB&T filed its fee motion on April 4, 2023.  (Doc. 207).[2]  It stated it had incurred attorneys' fees exceeding $1.1 million and expenses exceeding $66,500.00 in defending itself in this action, proposed an equal division of attorneys' fees and expenses between the 1989 Trust and the Shares Trust, and indicated it would submit evidence to support the amount of attorneys' fees and expenses requested once the court made a determination regarding liability under § 19-3B-709(a)(1).  (Doc. 207).[3]

Shortly thereafter, the court ordered the parties to mediate their dispute.  (Doc. 212).  The mediation was not successful.  On June 16, 2023, the court set a briefing

---

[2] A fee motion generally must be filed within 14 days after entry of judgment.  *See* Fed. R. Civ. P. 54(d)(2)(B)(i).

[3] BB&T additionally sought interest at the rate of 6% but later dropped that request.  (*Compare* Doc. 207 *with* Doc. 218).

3

schedule for BB&T's fee motion.  (Doc. 215).  Kate and Tiffany filed an opposition to the fee motion on July 7, 2023.  (Doc. 216).  On the same day, BB&T supplemented its fee motion with a request for a specific amount of attorneys' fees and expenses – $614,791.62 – and two affidavits supporting that sum.  (Docs. 218, 218-1, 218-2).[4]  The court entered an order on July 20, 2023, requesting additional information from the parties (the "order for clarification").  (Doc. 221).  BB&T filed its response to the order for clarification on August 1, 2023.  (Doc. 222).[5]  Kate and Tiffany filed their own response on August 3, 2023.  (Doc. 224).[6]  BB&T's fee motion is now ripe for review.[7]

## II. Discussion

### A. Liability

#### 1. Introduction

Section 19-3B-709 provides:

(a) A trustee is entitled to be reimbursed out of the trust property, with interest as appropriate for:

---

[4] BB&T represents it incurred attorneys' fees totaling $1,162,849.90 and expenses totaling $66,733.35 in furtherance of its defense.  (Doc. 218).

[5] Based on the additional information provided by BB&T, the court is satisfied it has before it all trustees of the 1989 Trust and, therefore, all parties necessary to adjudicate the pending fee motion. (*See* Docs. 221, 222).

[6] BB&T filed a reply to the sisters' response on August 10, 2023.  (Doc. 225).

[7] The order setting a briefing schedule for BB&T's fee motion instructed the parties to notify the court whether they wanted a hearing or, alternatively, preferred to stand on their papers.  (Doc. 215).  No party has responded to the instruction, so the court assumes the parties are satisfied with a determination made on the papers.

(1) expenses that were properly incurred in the administration of the trust, including the defense or prosecution of any action, whether successful or not, unless the trustee is determined to have willfully or wantonly committed a material breach of the trust . . . .

§ 19-3B-709(a)(1).[8]   The Alabama Supreme Court has held the provision "unequivocally" entitles a trustee to attorneys' fees and expenses for the successful defense of a breach of fiduciary duty claim against the trustee.  *See Ladd v. Stockham*, 209 So. 3d 457, 470-73 (Ala. 2016) ("*Ladd I*") (interpreting *Regions Bank v. Lowrey*, 101 So. 3d 210 (Ala. 2012) ("*Lowrey I*"); *Regions Bank v. Lowrey*, 154 So. 3d 101 (Ala. 2014) ("*Lowrey II*")).[9]   BB&T asserts a straightforward argument it is entitled to recover attorneys' fees and expenses from the 1989 Trust under § 19-3B-709(a)(1) because it successfully defended the sisters' claim it committed a breach of fiduciary duty in relation to the 1989 Trust.  The sisters oppose BB&T's fee motion on three grounds.

---

[8] A breach of trust is a type of breach of fiduciary duty.  *See* RESTATEMENT (THIRD) OF TRUSTS § 93 (2012) ("A breach of trust is a violation by a trustee of a fiduciary duty – that is, of any duty the trustee owes, *as trustee* – to the trust beneficiaries or to further the trust's charitable purpose(s)."); *In Int. of Delluomo v. Cedarblade*, 328 P.3d 291, 293 (Colo. App. 2014) ("A breach of trust . . . [is] but one species of breach of fiduciary duty.") (citing RESTATEMENT (THIRD) OF TRUSTS § 93).  The court will use the terms interchangeably in this memorandum opinion and order.

[9] Whether the trustee is a current trustee or a former one is immaterial, so long as the claim involves "an action which occurred while the trustee was a trustee." *Id.* at 473-74 (internal quotation marks omitted).  Moreover, the entitlement to attorneys' fees and expenses includes those incurred in litigating the right to reimbursement. *Lowrey II*, 154 So. 3d at 111-12.

### 2. The Sisters' Defenses

#### a. Futility

Kate and Tiffany first oppose BB&T's fee motion on the ground all assets held in the 1989 Trust have been distributed to them and, therefore, there is nothing from which BB&T can be reimbursed. (Docs. 216, 224). Courts do not refrain from entering a judgment for money damages or a fee award against a party because the party cannot satisfy the judgment or award. The financial ability to pay does not figure into the calculus. Kate and Tiffany have not come forward with any authority that would preclude a fee award against an existing but empty vessel. The Honorable John E. Ott, the magistrate judge originally assigned to this case, did just that – award attorneys' fees to be paid from empty (or, at least, potentially empty) vessels (that may or may not have existed) – in ruling on a motion filed under § 19-3B-709(a)(1) by Wells Fargo Bank, N.A. ("Wells Fargo"), a former trustee of the Shares Trust and the "Marital Trust" which was a defendant in this case. (Doc. 114).[10] In short, the first basis of the sisters' opposition to BB&T's fee motion is lacking in legal merit.

It also is lacking in factual merit. The representation no assets remain in the 1989 Trust was not accurate when Kate and Tiffany first made it in their July 7, 2023

---

[10] Judge Ott dismissed Wells Fargo as a defendant on November 14, 2014, under the doctrine of *forum non conveniens*. (Doc. 27). This case was reassigned to the undersigned magistrate judge on June 10, 2020, when Judge Ott retired.

opposition to BB&T's fee motion or when the sisters doubled-down in their August 1, 2023 response to the order for clarification.  An account statement submitted by the sisters in response to the order for clarification shows that as of July 1, 2023, the 1989 Trust held assets totaling $14,000.35.  (Doc. 224-3).[11]  That sum fell far short of the attorneys' fees and expenses BB&T seeks, but it was not the nothing the sisters claimed in their July 7, 2023 opposition.  The court used the past tense in the previous sentence because the account statement shows that on July 25, 2023, five days after entry of the order for clarification, $13,800.00 was withdrawn from the 1989 Trust.  (Doc. 224-3).  Very little remained in the trust after that withdrawal, and the sum fell even shorter of the attorneys' fees and expenses BB&T seeks.  However, very little and nothing are not equivalent, and nothing is what Kate and Tiffany represented remained in the 1989 Trust in their August 1, 2023 response to the order for clarification.

Moreover, while the 1989 Trust may currently hold very little assets from which BB&T can be reimbursed, that may not remain the case.  BB&T's briefing suggests it intends to attempt to claw back the $13,800.00 withdrawal from the 1989 Trust made on July 20, 2023, as a fraudulent transfer to evade a creditor, as well as

---

[11] Kate and Tiffany represent this sum was "retained for tax related purposes."  (Doc. 224).

distributions purportedly made to Kate and Tiffany.  (Doc. 225).[12]  BB&T has not

placed the claw back issues squarely before the court or asked the court to pass

judgment on the issues.  The availability of these and other potential collection

theories simply illustrates the flaw in the sisters' assertion it necessarily would be

"futile" to enter a fee award against the 1989 Trust.

### b. Purpose of Defense

Kate and Tiffany next oppose BB&T's fee motion on the ground the former

trustee incurred attorneys' fees to defend *itself* against a claim of wrongdoing and

not in connection with administration of the 1989 Trust.  (Doc. 216).  The sisters

rely principally on *Shriners Hospitals for Crippled Children v. Robbins*, 450 So. 2d

---

[12] The sisters initially asserted all assets held in the 1989 Trust – the court now knows it was fewer than all assets held in the 1989 Trust – had been distributed to them under Article 4B(3), which they incorrectly identified as Article 4A(3), of the governing trust instrument.  (Doc. 216).  The court observed the provision cited by Kate and Tiffany addresses the disposition of trust property on the grantor's death in the event such disposition is not addressed in the grantor's will and that the grantor – Joy – is still alive.  (Doc. 221).  The court directed Kate and Tiffany to address this discrepancy.  (Doc. 221).  The sisters then identified the missing links between Article 4(B)(3) of the governing trust instrument and distribution of the assets held in the 1989 Trust to them: an agreement in which Joy renounced her testamentary appointment power with respect to, and beneficial interest in, the 1989 Trust and designated Kate and Tiffany as the recipients of that interest; and an agreement in which Samantha Jo Adams, Joy's only other child, renounced her own beneficial interest in the 1989 Trust.  (Docs. 224, 224-1, 224-2).  The court had not seen either agreement until the sisters attached them to their response to the court's order for clarification.  The agreement executed by Joy indicates Kate and Tiffany were to receive their interests – now the exclusive interests – in the 1989 Trust according to Article 4(B) of the governing trust instrument.  (Doc. 224-1).  Article 4(B)(3) of the governing trust instrument specifies a share of the 1989 Trust set aside for a child of the grantor in the event the grantor did not exercise her testamentary appointment power is to be distributed in full to the child on her thirty-fifth birthday.  (Doc. 179-2).  Kate and Tiffany represent they are over the age of thirty-five and, therefore, were entitled to their respective shares of the 1989 Trust.  (Doc. 224).  BB&T's briefing previews an argument the 1989 Trust could not be modified in this manner and, therefore, the distributions made to Kate and Tiffany were improper.  (Doc. 225).

798 (Ala. 1984), to support this basis of their opposition.  The Alabama Supreme Court held in *Shriners Hospitals* that the circuit court erred in awarding attorneys' fees to trustees under Ala. Code § 19-3-6 (not under § 19-3B-709, as Kate and Tiffany assert) because the bulk of the fees was for services rendered to defend the trustees against claims of wrongdoing and not in connection with administration of the trust.  450 So. 2d at 802.  Section 19-3-6, together with other provisions of the Alabama Code governing trusts, was repealed in 2006 and replaced with the Alabama Uniform Trust Code, including § 19-3B-709.  H.B. 49, 2006 Reg. Sess. (Ala. 2006).  As stated, the Alabama Supreme Court, proceeding under § 19-3B-709, held in *Ladd I* that the provision "unequivocally" entitles a trustee to attorneys' fees for the successful defense of a breach of fiduciary duty claim against the trustee. In so holding, the Alabama Supreme Court reversed the denial of the trustee's motion for fees under § 19-3B-709, which the circuit court had based on the distinction articulated in *Shriners Hospitals*.  *Ladd I*, 209 So. 3d at 470-73. Following *Ladd I*, the second basis of the sisters' opposition to BB&T's fee motion holds no water.

### c. Commission of Material Breach Willfully or Wantonly

Kate and Tiffany finally oppose BB&T's fee motion on the ground BB&T committed a material breach of trust willfully or wantonly that precludes it from recovering attorneys' fees under § 19-3B-709(a)(1).  They argue (1) the doctrine of

collateral estoppel establishes a material and wanton breach of trust and, alternatively, (2) ask the court to make an independent determination now that BB&T committed a material breach of trust willfully or wantonly.

But the first question is how can the sisters maintain BB&T committed a breach of material trust willfully or wantonly after the court entered judgment in the former trustee's favor on the breach of fiduciary duty claim against it? This is a question Kate and Tiffany do not address directly.

The court observes § 9-3B-709(a)(1) references a determination a trustee committed a material breach of trust willfully or wantonly. It does not reference a determination the elements of a breach of trust claim are or have been established. The court did not address the element of breach in the discussion of the sisters' claim BB&T committed a breach of fiduciary duty in relation to the 1989 Trust contained in the March 22, 2023 memorandum opinion and order. As stated, the court concluded the claim failed on the duty element insofar as it relied on the instrument governing the 1989 Trust and on the damages element insofar as it relied on the AUTC. Additionally, Alabama Supreme Court precedent could be read as allowing for the possibility a trustee could defend a breach of fiduciary duty claim successfully – either on the substantive merits of the claim or on grounds other than the claim's merits – but be denied attorneys' fees based on a determination made in relation to a later-filed motion for attorneys' fees under § 19-3B-709(a)(1) that the

trustee committed a material breach of trust willfully or wantonly.  *See Stockham v. Ladd*, 333 So. 3d 928 (Ala. 2020) ("*Ladd II*").[13]  This reading of § 19-3B-709(a)(1) and *Ladd II* seems out of step with the United States Supreme Court's instruction that "[a] request for attorney's fees should not result in a second major litigation." *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Nonetheless, in the interest of thoroughness and because the burden is not a heavy one in this case, the court will entertain the possibility a plaintiff's breach of fiduciary duty claim could fail because the plaintiff did not prove all elements of the claim and yet a trustee would not be entitled to attorneys' fees because the plaintiff at least proved or could prove the trustee committed a material breach of trust willfully or wantonly.

---

[13] The Circuit Court of Jefferson County, Alabama, held in *Ladd I* that Ladd's breach of fiduciary duty claim against Stockham was barred by the statute of limitations and, regardless, Stockham had not breached any duty owed to Ladd as a matter of law.  *See Ladd I*, 209 So. 3d at 462.  The court then denied Stockham's motion for attorneys' fees brought under, *inter alia*, § 19-3B-709(a)(1).  *See id.*  It is not necessary for purposes of the present motion to explain the court's grounds for denying Stockham's motion, except to say it did not involve consideration of whether Stockham had committed a material breach of trust willfully or wantonly.  *See id.* at 470.  The Alabama Supreme Court affirmed summary judgment in favor of Stockham on the statute of limitations ground without reaching the question of whether Stockham had breached a fiduciary duty *vis-à-vis* Ladd, reversed the denial of Stockham's fee motion, and remanded the case to the circuit court for reconsideration of the motion.  *Id.* at 463-74.  Ladd argued for the first time on remand that Stockham was not entitled to attorneys' fees under § 19-3B-709(a)(1) because he had committed a material breach of trust willfully or wantonly.  *See Ladd II*, 333 So. 3d at 934.  The circuit court, proceeding by a successor judge, agreed with Ladd and denied Stockham's fee motion again.  *See id.*  The Alabama Supreme Court reversed again, not because Stockham had defended the breach of fiduciary duty claim successfully on both procedural and substantive grounds at the summary judgment stage of the case, but rather because Ladd first raised an argument based on the statutory defense codified in § 19-3B-709(a)(1) on remand and, therefore, the argument was not properly before the circuit court and could not serve as a basis for denying Stockham's fee motion.  *Id.* at 939-40.  On remand for the second time, the circuit court granted the motion.  *See George Ladd v. Herbert Stockham, et al.*, 01-CV-2012-902305.00 at Doc. 984.

### i. Collateral Estoppel Doctrine

In the related state case, Judge Vance granted summary judgment in favor of Wells Fargo based on a statute-of-limitations defense but denied Wells Fargo's motion for attorneys' fees based in part on the finding that while the claims asserted against it had suffered from "several legal infirmities," "the evidence show[ed] that Wells Fargo was complicit in a pattern of abuse and neglect that allowed [] Joy [] to plunder the various trusts that her father had established" and "ignored its oversight responsibilities over several years, in what can easily be regarded as a wanton dereliction of its fiduciary responsibilities."  (*See* Doc. 204 at 9-11, 13, 13 n.21). Kate and Tiffany assert BB&T is in privity with Wells Fargo so the finding regarding Wells Fargo's wanton dereliction of fiduciary responsibilities in the state case translates to a finding here that BB&T committed a wanton dereliction of fiduciary responsibilities.

The sisters' argument conflates two separate requirements for application of the collateral estoppel doctrine: (1) that the issue presented in the prior action is "identical" to the issue presented in the subsequent action and (2) that the prior action involved the "same parties" as the subsequent action, which may include a party in privity with a party to the prior action.  (*See* Doc. 204 at 27, 30).  The issue presented in the related state case was whether Wells Fargo's conduct as a trustee disentitled it to attorneys' fees and expenses.  The issue presented in this case is whether

BB&T's conduct as a trustee disentitles it to attorneys' fees and expenses, and that is an entirely different issue.[14]  BB&T's privity with Wells Fargo, if any, does not transmogrify the one into the other.

### ii. Independent Determination

Kate and Tiffany alternatively ask the court to make an independent determination now that BB&T committed a material breach of trust willfully or wantonly.  It bears emphasizing at the outset of the discussion of this basis of the sisters' opposition to BB&T's fee motion that the more precise question is whether BB&T committed a material breach of the *1989 Trust* willfully or wantonly.  BB&T seeks to recover attorneys' fees under § 19-3B-709(a)(1) in relation to the 1989 Trust, and so its conduct in relation to the 1989 Trust is what matters.  Kate and Tiffany's recitation of the ways in which BB&T allegedly breached its fiduciary duties in relation to the Shares Trust is irrelevant.

It also bears emphasizing at the outset of the discussion that the only breach of fiduciary duty claim Kate and Tiffany asserted in relation to the 1989 Trust that made it to, if not past, summary judgment was the claim BB&T failed to audit the trust annually and provide Kate and Tiffany, as beneficiaries of the trust, with annual

---

[14] The court reiterates Judge Ott determined liability could not be imposed on BB&T based on its succession to, or vicarious liability for, its predecessors' fiduciary breaches.  He concluded BB&T could be liable for fiduciary breaches committed by its predecessors only to the extent it was aware of the breaches and failed to remedy them.  (Doc. 46 at 35-43).

accounting reports, either under the governing trust instrument or under the AUTC. (*See* Doc. 205 at 45-46, 45 n.43).  The sisters' assertion of other ways BB&T allegedly breached its fiduciary duties in relation to the 1989 Trust has no bearing on BB&T's fee motion.

It is self-evident there can be no breach of any magnitude absent an underlying obligation.  A trustee cannot breach a fiduciary duty that does not exist.  As stated, the court concluded in the March 22, 2023 memorandum opinion and order that the sisters' claim BB&T committed a breach of fiduciary duty in relation to the 1989 Trust failed insofar as it relied on the governing trust instrument because the sisters were not owed any reporting obligation under that instrument.  Kate and Tiffany have given the court no reason to reconsider that conclusion, and the conclusion forecloses the argument that BB&T committed a material breach of trust willfully or wantonly under the instrument governing the 1989 Trust by failing to audit the trust annually and provide the sisters with annual accounting reports.  Whether there can be a willful or wanton material breach absent damage suffered because of the breach merits more consideration.

Kate and Tiffany offer no view of the requirements for a finding of materiality, willfulness, or wantonness.  The court has undertaken its own survey of authority. Alabama courts have not addressed what constitutes a material breach of trust under § 19-3B-709(a)(1) or when a material breach is committed willfully or wantonly

under that section.  And the court found no helpful discussion of the concepts of materiality, willfulness, or wantonness in Alabama caselaw addressing trust administration claims outside the context of § 19-3B-709(a)(1) or the caselaw of other states.

The court did find helpful discussion of the concept of materiality in the context of claims for breach of contract.[15]  A leading commentator has observed that "where a breach causes no damages or prejudice to the [non-breaching] party, it may be deemed not to be 'material.'"  23 WILLISTON ON CONTRACTS § 63:3 (4th ed.). This observation regarding an immaterial breach has been quoted favorably by state and federal courts.  *See, e.g., AirFacts, Inc. v. Amezaga*, 30 F.4th 359, 364 (4th Cir. 2022) (quoting WILLISTON and holding breach of employment agreement was immaterial because there was no evidence breach harmed or prejudiced non-breaching party); *Reyelt v. Danzell*, 533 F.3d 28, 32, 32 n.1 (1st Cir. 2008) (holding breach of contract for sale of land was not material because it did not cause loss of extra money to non-breaching party); *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 64 F.3d 1202, 1212 n.8 (8th Cir. 1995) (holding breach of distribution agreement was not material where breach caused no damage or prejudice to non-breaching

---

[15] *See Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n.5 (11th Cir. 2005) ("[A] federal court attempting to forecast state law [in the absence of precedent from the highest state court or intermediate state appellate courts] must consider whatever might lend it insight, including relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.") (internal quotation marks omitted).

party); *Found. for Seacoast Health v. Hosp. Corp. of Am.*, 71 A.3d 736, 747 (N.H. 2013) (quoting WILLISTON and holding breach of asset purchase agreement was not material because it caused no injury to non-breaching party).

It makes intuitive sense a breach that causes no damage or prejudice to the non-breaching party is not a material breach.  In the absence of guidance from Alabama courts or argument from Kate and Tiffany regarding what constitutes a material breach of trust that precludes a trustee from recovering attorneys' fees under § 9-3B-709(a)(1), the court will apply the "rule" articulated in WILLISTON and adopted by courts outside Alabama in the context of breach of contract claims. Because there is no evidence of damages Kate and Tiffany suffered because BB&T shirked its alleged auditing and reporting obligations under the AUTC in relation to the 1989 Trust, BB&T did not commit a material breach of the trust, if it committed a breach at all.

### 3. BB&T's Entitlement to Attorneys' Fees & Expenses

This brings the court back to BB&T's argument it is entitled to recover attorneys' fees and expenses from the 1989 Trust under the plain language of § 19-3B-709(a)(1) because it successfully defended the sisters' claim it committed a breach of fiduciary duty in relation to the 1989 Trust.  Having explained why the sisters' arguments to the contrary are not meritorious, the court agrees and proceeds

to the question of whether the amount of attorneys' fees and expenses BB&T seeks are reasonable.

## B. Reasonableness Inquiry

As stated, BB&T represents it incurred attorneys' fees totaling $1,162,849.90 and expenses totaling $66,733.36 in defending itself in this action. (Doc. 218). It proposes an equal division of the attorneys' fees and expenses between the 1989 Trust and the Shares Trust, so that it would recover attorneys' fees and expenses totaling $614,791.62 from the 1989 Trust for defending the breach of fiduciary duty claim asserted against it in relation to that trust. (Docs. 207, 218). BB&T supports its request with the affidavit of Larry B. Childs, who represented BB&T in this action, and the affidavit of Victor L. Hayslip, who represented Wells Fargo. Childs' affidavit sets out the number of attorney hours spent on this matter over the course of nearly 10 years (3,694.5, spread amongst multiple attorneys) and the attorneys' rates (ranging from under $200 per hour to $741.00 per hour). (Doc. 218-1). It also itemizes the expenses incurred in furtherance of BB&T's defense. (Doc. 218-1). Childs attests that, in his professional judgment, an even allocation of attorneys' fees and expenses between the 1989 Trust and the Shares Trust is reasonable and the amount of attorneys' fees and expenses sought from the 1989 Trust is reasonable.

(Doc. 218-1).[16]   Hayslip attests to the same.  (Doc. 218-2).  Childs and Hayslip remind the court that Kate and Tiffany sought eight figures' worth of damages from BB&T in relation to the 1989 Trust.  (Docs. 207, 218-1, 218-2).  Childs attests that the amount in controversy "imposed heavy responsibilities" on the attorneys representing BB&T.  (Doc. 218-1).  Kate and Tiffany have not addressed the amount of attorneys' fees and expenses BB&T seeks at all.  Their opposition to BB&T's fee motion was limited to the argument BB&T did not meet the requirements for an award of any amount under § 19-3B-709(a)(1).

"Where the right to attorneys' fees and costs sounds in state law and reaches [a district court] by way of federal diversity jurisdiction, [the district court] appl[ies] the substantive law of the forum state."  *Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*, 572 F. App'x 796, 801 (11th Cir. 2014) (citing *Trans Coastal Roofing Co. v. David Boland, Inc.*, 309 F.3d 758, 760 (11th Cir. 2002)).  Section 19-3B-709(a)(1) requires that attorneys' fees and expenses awarded under the statute have been "properly incurred."  § 19-3B-709(a)(1).  The Alabama Supreme Court implicitly has equated the phrase "properly incurred" with reasonableness.  *See Ladd I*, 209 So. 3d at 470; *Lowrey II*, 154 So. 3d at 108.  The determination of reasonableness is within the sound discretion of the trial court.

---

[16] Childs notes the rates BB&T was charged for legal services were substantially discounted.  (Doc. 218-1).

*Ladd I*, 209 So. 3d at 470; *Lowrey II*, 154 So. 3d at 108; *Am. C.L. Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (addressing statutory fee award in federal civil rights case).  The Alabama Supreme Court has identified 12 criteria a court "might consider" when determining the reasonableness of attorneys' fees:

> "(1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed, (4) the professional experience and reputation of the attorney, (5) the weight of his responsibilities, (6) the measure of success achieved, (7) the reasonable expenses incurred, (8) whether a fee is fixed or contingent, (9) the nature and length of a professional relationship, (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances."

*Lowery II*, 154 So. 3d at 108 (alterations adopted) (quoting *Van Schaack v. AmSouth Bank, N.A.*, 530 So. 2d 740, 749 (Ala. 1988)).  "[T]hese criteria are evaluative and not an exhaustive list of specific criteria that all must be met when reviewing the reasonableness of any attorney fee."  *Beal Bank, SSB v. Schilleci*, 896 So. 2d 395, 403 (Ala. 2004).  A court may consider pertinent criteria not included in the foregoing list, as well.  *Edelman & Combs v. Law*, 663 So. 2d 957, 960 (Ala. 1995).

The court has considered the 12 criteria identified by the Alabama Supreme Court and concludes the attorneys' fees and expenses BB&T seeks to recover from the 1989 Trust are reasonable.  The factors that weigh most heavily in the balance are the third, fifth, and sixth factors.  When BB&T filed its fee motion, this case was seven months shy of ten years old and had consumed nearly 4,000 hours of attorney

time from BB&T's perspective.  The parties engaged in multiple rounds of motion practice with extensive briefing.  This case was factually complex insofar as Kate and Tiffany challenged trustee conduct going back decades, legally complex insofar as the parties raised and argued unsettled issues of Alabama trust law, and procedurally complex insofar as the defense of BB&T in this action required counsel to stay abreast of developments in the related state case, which itself was factually, legally, and procedurally complex.  The factual, legal, and procedural complexity, coupled with the great amount of damages Kate and Tiffany claimed, would have imposed an immense responsibility on even seasoned trust attorneys.  Counsel for BB&T ultimately achieved dismissal or judgment in BB&T's favor on all claims asserted against the former trustee by Kate and Tiffany, including the claim BB&T committed a breach of fiduciary duty in relation to the 1989 Trust.  Also relevant to the court's determination of reasonableness is the fact that Kate and Tiffany have not challenged the amount of attorneys' fees and expenses BB&T seeks.

## III. Conclusion

For the reasons stated above, the court **GRANTS** BB&T's fee motion (Doc. 207) and **AWARDS** BB&T attorneys' fees and expenses totaling $614,791.62, to be paid out of the 1989 Trust, to the extent the trust now or in the future holds assets from which the award may be satisfied in full or part.

**DONE** this 2nd day of August, 2024.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE